[Cite as *State v. Jefferson*, 2012-Ohio-148.]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT


STATE OF OHIO,

      Plaintiff-Appellee,

v.

ANTOINE JEFFERSON,

      Defendant-Appellant.

JUDGES:
Hon. W. Scott Gwin, P. J.
Hon. John W. Wise, J.
Hon. Patricia A. Delaney, J.

Case No. 11 CAA 04 0033


O P I N I O N


| | |
|---|---|
| CHARACTER OF PROCEEDING: | Criminal Appeal from the Court of Common Pleas, Case No. 10 CR I 04 0238 |
| JUDGMENT: | Affirmed |
| DATE OF JUDGMENT ENTRY: | January 17, 2012 |

APPEARANCES:

| For Plaintiff-Appellee | For Defendant-Appellant |
|---|---|
| CAROL HAMILTON O'BRIEN<br>PROSECUTING ATTORNEY<br>DOUGLAS DUMOLT<br>ASSISTANT PROSECUTOR<br>140 N. Sandusky Street, 3rd Floor<br>Delaware, Ohio 43015 | ELIZABETH N. GABA<br>1231 East Broad Street<br>Columbus, Ohio 43205 |

*Wise, J.*

**{¶1}** Defendant-Appellant Antoine Jefferson appeals his conviction and sentence on tampering with evidence and obstructing official business, entered in the Delaware County Common Pleas Court following a jury trial.

**{¶2}** Plaintiff-Appellee is the State of Ohio.

## STATEMENT OF THE FACTS AND CASE

**{¶3}** On April 8, 2010, Trooper Matthew Himes of the Ohio State Highway Patrol was working drug interdiction on Interstate 71 in Delaware County Ohio. At approximately 10:00 a.m., he was stationary, in a marked patrol car watching traffic pass by. At approximately 10:05 a.m., Trooper Himes observed a green Land Rover travelling northbound on I-71. As the vehicle passed him, Trooper Himes ran the license plate through the Law Enforcement Automated Data Systems (LEADS) which revealed that the Ohio driver's license of the vehicle's registered owner expired in 1999. Further, it showed the vehicle was purchased in July, 2009, in Ohio.

**{¶4}** Trooper Himes pulled up beside the vehicle, identified the driver as the registered owner by his physical description, and initiated a traffic stop for driving without a valid license. Once the vehicle was stopped, Trooper Himes approached the vehicle and made contact with Appellant, the driver of the vehicle.

**{¶5}** When asked, Appellant indicated that he did not have an Ohio driver's license. He indicated that he was a Georgia resident and had a Georgia driver's license. Appellant presented his Georgia driver's license to Trooper Himes, who returned to his cruiser to check its validity.

**{¶6}** According to Trooper Himes, while at his vehicle, but before he had determined the validity of Appellant's license or his state or residency, he radioed Trooper Norman to bring his canine partner to the scene. According to Trooper Himes, at that time he had already learned that just four days prior to the traffic stop, Appellant had been convicted of driving without a valid license in Mansfield Municipal Court. He had also learned that the vehicle Appellant was driving had been purchased in Ohio nine months prior.

**{¶7}** While Trooper Himes was still awaiting the status of Appellant's license and checking his criminal history, Trooper David Norman and his canine partner arrived on the scene. Trooper Norman had his canine partner conduct a free-air sniff around the vehicle. At that time, the canine alerted on the vehicle for the odor of narcotics. When the canine alerted on Appellant's vehicle, the Troopers conducted a probable cause search of the motor vehicle. Appellant and his passenger were removed from the vehicle, Appellant was read his Miranda rights and then placed, without handcuffs, in the back of Trooper Himes' cruiser while the search was conducted.

**{¶8}** Prior to placing Appellant in the back of his cruiser, Trooper Himes asked him if he carried a knife or any kind of weapon. Appellant denied having any weapons and consented to a pat-down search for weapons.

**{¶9}** Trooper Himes stated that while the other troopers were continuing the search of Appellant's vehicle, he returned to his cruiser and spoke with Appellant about the odor of narcotics in his vehicle. Appellant stated that there were no narcotics in the vehicle and that he had the vehicle cleaned a few days prior to the traffic stop.

{¶10} Trooper Himes then left his cruiser and returned to Troopers Norman and Wilson, who were at the front of Appellant's vehicle. It was at this time that Trooper Wilson approached Appellant, and Trooper Himes attempted to search the engine compartment of the motor vehicle for concealed contraband. While Trooper Himes was attempting to locate a hood release for Appellant's vehicle, he noticed Trooper Wilson and Appellant in a struggle. Trooper Himes ran back to assist, but before he got back to his cruiser, Appellant had fallen down, gotten up, and was climbing over a barbed wire fence. Trooper Himes deployed his laser, but it was ineffective.

{¶11} According to Trooper Wilson, he had approached the Appellant seated in Trooper Himes' cruiser and asked Appellant to exit the cruiser so that he could perform a search of Appellant's person. Trooper Wilson stated that he had noticed a heightened level of nervousness throughout the traffic stop that did not dissipate as it does in the course of a typical traffic stop. Trooper Wilson explained that he was performing a consensual search for drugs based on the "nervousness" of the defendant, positive canine hit, and absence of contraband in the vehicle.

{¶12} Trooper Wilson stated that he asked Appellant for permission to perform the search and that Appellant gave verbal consent. During the pat down, Trooper Wilson started on Appellant's right side and came down his right front pocket, down the side of his right leg, and back up the inside of his right leg. At no point did he manipulate any object to determine its identity." When he reached the inside of Appellant's right leg, he felt what he believed to be a plastic baggie containing crack cocaine. At that time, Appellant attempted to elbow Trooper Wilson in the head and started to run. Trooper Wilson grabbed his sweatshirt and held on and attempted to throw him to the ground.

Unable to do so, Trooper Wilson spun him in a circle and let go. Appellant then proceeded to get up and take off running. The three troopers pursued him and called for him to stop. Two of the troopers attempted to stun Appellant with their tasers, but were unable to stop him from climbing over a barbed wire fence near the highway and fleeing the scene.

{¶13} Trooper Himes, Trooper Norman, and Trooper Wilson pursued Appellant over the fence, while Sergeant Kemmer stayed with Appellant's companion and the cruisers. The troopers continued to chase Appellant for approximately two hundred yards to a small lake, which Appellant jumped into. Appellant swam out approximately thirty yards into the "muck," roughly chest deep in the water, and the troopers watched him destroying the suspected contraband. Appellant then returned to shore with his pants down around his legs, weighed down from the water and the mud. He also had cuts from the pursuit, so a squad was called to treat Appellant's injuries. Appellant was placed under arrest.

{¶14} On April 16, 2010, the Grand Jury of Delaware County indicted Appellant Antoine Jefferson on one count of Tampering with Evidence, in violation of R.C. §2929.12(A)(1), a third degree felony, and one count of Obstructing Official Business, in violation of R.C. §2921.31(A), a fifth degree felony.

{¶15} On August 31, 2010, Appellant filed a motion to suppress.

{¶16} On October 8, 2010, a hearing was held on Appellant's motion to suppress.

{¶17} By Judgment Entry filed October 18, 2010, the trial court denied Appellant's motion to suppress.

**{¶18}** On March 3, 2011, this matter proceeded to jury trial.

**{¶19}** The jury found Appellant guilty as charged.

**{¶20}** Appellant now appeals, assigning the following errors for review:

## ASSIGNMENTS OF ERROR

**{¶21}** "I. THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT'S FOURTH AMENDMENT RIGHTS TO THE U.S. CONSTITUTION AND ARTICLE ONE SECTION FOURTEEN OF THE OHIO CONSTITUTION BY OVERRULING HIS MOTION TO SUPPRESS EVIDENCE, AS

**{¶22}** "a) THERE WAS NO LEGITIMATE REASON FOR THE UNDERLYING TRAFFIC STOP (PLAIN ERROR ANALYSIS),

**{¶23}** "b) THE STOP'S SCOPE AND DURATION WERE IMPROPER AND THE DETAINMENT OF APPELLANT IN THE POLICE CRUISER WHILE THE POLICE ENGAGED IN A "FISHING EXPEDITION" WAS UNLAWFUL,

**{¶24}** "c) THE POLICE HIDING EVIDENCE BY TURNING OFF THEIR MICROPHONES WAS UNLAWFUL, AND VIOLATED APPELLANT'S 5TH, 6TH, AND 14TH AMENDMENT RIGHTS

**{¶25}** "d) THE FIRST SEARCH WAS IMPROPER, AND

**{¶26}** "e) THE SECOND SEARCH OF DEFENDANT'S BODY WAS UNLAWFUL.

**{¶27}** "ALL EVIDENCE AND STATEMENTS OBTAINED AFTER THE SEARCH SHOULD HAVE BEEN SUPPRESSED AND THE CASE DISMISSED.

**{¶28}** "II. THE TRIAL COURT COMMITTED STRUCTURAL, CONSTITUTIONAL AND/OR PLAIN ERROR TO THE PREJUDICE OF APPELLANT,

AND THE JUDGE EXCEEDED HIS STATUTORY AUTHORITY BY INSERTING HIMSELF IN THE PLEA ARRANGEMENTS AND ORDERING APPELLANT THAT HE MUST ADMIT THAT HE POSSESSED DRUGS, WHEN HE DID NOT, AS A CONDITION OF ANY PLEA ARRANGEMENT.

**{¶29}** "III. THE TRIAL COURT ERRED AS A MATTER OF LAW, TO THE PREJUDICE OF APPELLANT, WHEN IT STRUCK DEFENDANT'S OPENING STATEMENT AND QUESTIONS, CONVEYING TO THE JURY THE COURT'S VIEW ABOUT THE DEFENDANT'S FAILURE TO TESTIFY, AND ERRED WHEN IT DENIED THE DEFENSE MOTION FOR MISTRIAL.

**{¶30}** "IV.  THE TRIAL COURT ERRED AS A MATTER OF LAW, TO THE PREJUDICE OF APPELLANT, BY CONVICTING APPELLANT, BECAUSE THIS CONVICTION WAS BOTH AGAINST THE MANIFEST WEIGHT OF THE. EVIDENCE AND THE EVIDENCE WAS INSUFFICIENT TO SUPPORT THE CONVICTION.

**{¶31}** "V. APPELLANT WAS DEPRIVED OF EFFECTIVE ASSISTANCE OF COUNSEL, IN VIOLATION OF HIS 6TH AMENDMENT RIGHTS, WHEN DEFENSE COUNSEL FAILED TO SHOW THE CD AT TRIAL AND FAILED TO HAVE APPELLANT TESTIFY."

I.

**{¶32}** In his first assignment of error, Appellant argues that the trial court erred in overruling his motion to suppress.  We disagree.

**{¶33}** There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether the

findings of fact are against the manifest weight of the evidence. See *State v. Fanning* (1982) 1 Ohio St.3d 19, 437 N.E.2d 583; *State v. Klein* (1991), 73 Ohio App.3d 486, 597 N.E.2d 1141; *State v. Guysinger* (1993), 86 Ohio App.3d 592, 621 N.E.2d 726. Second, an appellant may argue that the trial court failed to apply the appropriate test or correct law to the findings of fact. See *State v. Williams* (1993), 86 Ohio App.3d 37, 619 N.E.2d 1141, overruled on other grounds. Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue that the trial court incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. *State v. Curry* (1994), 95 Ohio App.3d 93, 96, 641 N.E.2d 1172; *State v. Claytor* (1993), 85 Ohio App.3d 623, 627, 620 N.E.2d 906; and *Guysinger,* supra.

{¶34} Here, Appellant challenges the trial court's interpretation of the law and conclusion on the ultimate issues. Our review is therefore de novo.

{¶35} Appellant alleges that the traffic stop was unconstitutionally delayed and further that the searches of his person were unconstitutional. Appellant also argues that the traffic stop was not based on a reasonable and articulable suspicion of criminal activity.

{¶36} With regard to Appellant's challenge to probable cause for the traffic stop, we find that Appellant did not raise this issue in his motion to suppress before the trial court. It is well established that a party cannot raise any new issues or legal theories for the first time on appeal." *Dolan v. Dolan,* 11th Dist. Nos. 2000-T-0154 and 2001-T-

0003, *2002-Ohio-2440,* at ¶ 7, citing *Stores Realty Co. v. Cleveland* (1975), 41 Ohio St.2d 41, 43, 322 N.E.2d 629. "Litigants must not be permitted to hold their arguments in reserve for appeal, thus evading the trial court process." *Nozik v. Kanaga* (Dec. 1, 2000), 11th Dist. No. 99-L-193, 2000 Ohio App. LEXIS 5615. We find that Appellant therefore has waived review of this issue by failing to raise it at the trial level. See *State v. Awan* (1986), 22 Ohio St.3d 120, 489 N.E.2d 277.

{¶37} However, even under a plain error analysis, we find that the trooper had a reasonable articulable suspicion for the traffic stop in this matter based on information he garnered through a random license plate check. Such check revealed that the registered owner of the vehicle had an expired driver's license, and upon pulling alongside the vehicle, the trooper was able to see that Appellant fit the description of the registered owner.

{¶38} We must next consider the propriety of the trooper's detention of Appellant and his vehicle at the traffic stop. We recognize the general rule that the scope and duration of an investigatory stop must last no longer than is necessary to effectuate the purpose for which the initial stop was made. See, e.g., *State v. Bevan* (1992), 80 Ohio App.3d 126, 129.

{¶39} This Court has concluded: "[W]hen a motorist is lawfully detained pursuant to a traffic stop and when the purpose of the traffic stop has yet to be fulfilled, the Fourth Amendment is not violated when the officer employs a trained narcotics canine to sniff the vehicle for drugs." *State v. Latona,* Richland App. No.2010-CA-0072, 2011-Ohio-1253, ¶25, citing *State v. Guckert* (Dec. 20, 2000), Washington App. No. 99CA49, 2000-Ohio-1958.

**{¶40}** Furthermore, when detaining a motorist for a traffic violation, an officer may delay a motorist for a time period sufficient to issue a ticket or a warning, including the time sufficient to run a computer check on the driver's license, registration, and vehicle plates. *State v. Brown,* Tuscarawas App.No. 2009AP050024, 2010-Ohio-1110, ¶ 22, citing *State v. Batchili,* 113 Ohio St.3d 403, 865 N.E.2d 1282, 2007-Ohio-2204, ¶ 12, and *State v. Bolden,* Preble App.No. CA2003-03-007, 2004-Ohio-184, ¶ 17.

**{¶41}** In the case sub judice, the trooper made a routine check with his dispatcher to check Appellant's license and warrant status. While he was awaiting a response, he decided to call a K9 unit to conduct an exterior drug sniff.

**{¶42}** We therefore conclude that the brief detention of Appellant in this instance to allow for the computer check on Appellant's driver's license status and to conduct a non-invasive drug dog sniff of the car's exterior was also constitutionally valid.

**{¶43}** Appellant also challenges the pat-down searches of his person. Appellant herein essentially argues that the evidence of his actions, which occurred immediately after he was being searched, should have been suppressed. We find the fundamental issue in this case, however, is whether Appellant's independent criminal activity would have been "fruit of the poisonous tree" and thus subject to suppression, even if we were to find the police seizure was illegal.

**{¶44}** The Fourth Amendment prohibits unreasonable searches and seizures. "However, an observation of a fresh crime committed during or after the arrest is not to be suppressed even if the arrest is unlawful." *State v. Ali,* 154 Ohio App.3d 493, 797 N.E.2d 1019, 2003–Ohio–5150, ¶ 13. "The Fourth Amendment's exclusionary rule, which [the defendant] seeks to invoke, does not sanction violence as an acceptable

response to improper police conduct. The exclusionary rule only pertains to evidence obtained as a result of an unlawful search and seizure." *Id.* at ¶ 16, 797 N.E.2d 1019, quoting *Akron v. Recklaw* (Jan. 30, 1991), Summit App.No. 14671, 1991 WL 11392 (additional citations omitted).

**{¶45}** Here, we find that the conduct for which Appellant was arrested and charged, obstructing official business and tampering with evidence, was unrelated to and independent of such searches.

**{¶46}** Based on the foregoing, we find that the trial court therefore correctly decided the ultimate issues raised in Appellant's motion to suppress.

**{¶47}** Appellant's first assignment of error is overruled.

II.

**{¶48}** In his second assignment of error, Appellant claims that the trial court erred in participating in the plea negotiations. We disagree.

**{¶49}** In this case, Appellant challenged the State's recitation of the facts.

**{¶50}** Under Ohio law, trial courts may reject plea agreements and are not bound by a jointly recommended sentence. *State v. Underwood,* 124 Ohio St.3d 365, 2010-Ohio-1, 922 N.E.2d 923, ¶ 28. The decision to accept or reject a plea bargain rests solely within the discretion of the trial court. *State v. Asberry,* 173 Ohio App.3d 443, 2007-Ohio-5436, 878 N.E.2d 1082.

**{¶51}** We find no abuse of discretion in the trial court's refusal to accept Appellant's plea. We therefore find Appellant's argument not well-taken.

III.

{¶52} In his third assignment of error, Appellant argues that the trial court erred in not granting a mistrial. We disagree.

{¶53} During opening statements in this case, defense counsel made a number of statements concerning Appellant's reasons for being uncomfortable with the pat-down search, his fear of dogs and taser guns, the fact that he possessed a valid Georgia driver's license and that he never intended to run from the police. A short while into the trial, defense counsel informed the trial court that he had decided to not have Appellant take the witness stand. Based on the lack of evidence in support of any the assertions made in opening statements, the trial court struck defense counsel's opening statements. Following closing arguments, defense counsel moved the trial court for a mistrial based on the trial court's statements to the jury striking the opening statements.

{¶54} The granting of a mistrial rests within the sound discretion of the trial court, as it is in the best position to determine whether the situation at hand warrants such action. *State v. Glover* (1988), 35 Ohio St.3d 18, 517 N.E.2d 900; *State v. Jones* (1996) 115 Ohio App.3d 204, 207, 684 N.E.2d 1304, 1306.

{¶55} "A mistrial should not be ordered in a criminal case merely because some error or irregularity has intervened * * *." *State v. Reynolds* (1988), 49 Ohio App.3d 27, 33, 550 N.E.2d 490, 497. The granting of a mistrial is necessary only when a fair trial is no longer possible. *State v. Franklin* (1991), 62 Ohio St.3d 118, 127, 580 N.E.2d 1, 9; *State v. Treesh* (2001), 90 Ohio St.3d 460, 480, 739 N.E.2d 749, 771. When reviewed by the appellate court, we should examine the climate and conduct of the entire trial, and reverse the trial court's decision as to whether to grant a mistrial only for a gross

abuse of discretion. *State v. Draughn* (1992), 76 Ohio App.3d 664, 671, 602 N.E.2d 790, 793–794, citing *State v. Maurer* (1984), 15 Ohio St.3d 239, 473 N.E.2d 768, certiorari denied (1985), 472 U.S. 1012, 105 S.Ct. 2714, 86 L.Ed.2d 728; *State v. Gardner* (1998), 127 Ohio App.3d 538, 540–541, 713 N.E.2d 473, 475.

**{¶56}** Upon review, we find no abuse of discretion in the trial court's decision to strike the improper statements contained in the opening statements and provide the jury with a limiting instruction.

**{¶57}** Appellant's third assignment of error is overruled.

IV.

**{¶58}** In his fourth assignment of error, Appellant argues that his conviction is against the manifest weight and sufficiency of the evidence.

**{¶59}** In determining whether a verdict is against the manifest weight of the evidence, the appellate court acts as a thirteenth juror and "in reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in evidence the jury 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins,* 78 Ohio St.3d 380, 387, 678 N.E.2d 541, 1997–Ohio–52, quoting *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717.

**{¶60}** An appellate court's function when reviewing the sufficiency of the evidence is to determine whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the

crime proven beyond a reasonable doubt. *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.

**{¶61}** In the instant case, Appellant was convicted of obstructing official business and tampering with evidence.

**{¶62}** The elements of the offense of obstruction of official business are set forth in R.C. §2921.31(A), and are as follows:

**{¶63}** "No person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's capacity, shall do any act that hampers or impedes a public official in the performance of the official's lawful duties."

**{¶64}** The crime of Tampering with Evidence is set forth in R.C. §2921.12(A)(1), and provides in pertinent part:

**{¶65}** "(A) No person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall do any of the following:

**{¶66}** "(1) Alter, destroy, conceal, or remove any record, document, or thing, with purpose to impair its value or availability as evidence in such proceeding or investigation;"

**{¶67}** In this case, the State presented evidence to support the charge of obstructing official business. Appellant had been stopped for a traffic search and was being searched by a State Highway Patrolman when he took off running away from the officer. The officers were required to pursue Appellant and then call an ambulance to have Appellant's minor injuries treated. Appellant's actions delayed the performance of the completion of the traffic stop and search of Appellant's person.

**{¶68}** The State also presented evidence that Appellant ran away from the patrolmen immediately upon Trooper Himes' discovery of an object in appellant's pant that he believed to be crack cocaine. While the patrolmen were chasing Appellant, he ran into a lake, removed something from his pant and dropped it into the murky water.

**{¶69}** The weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. Jamison* (1990), 49 Ohio St.3d 182, 552 N.E.2d 180, certiorari denied (1990), 498 U.S. 881, 111 S.Ct. 228, 112 L.Ed.2d 183.

**{¶70}** Viewing the evidence in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that Appellant's actions were done to "alter, destroy, conceal, or remove any record, document, or thing, with purpose to impair its value or availability as evidence in such proceeding or investigation."

**{¶71}** Based on the foregoing, we find that the State met its burden of production regarding each element of the crime and, accordingly, there was sufficient evidence to support Appellant's convictions.

**{¶72}** "A fundamental premise of our criminal trial system is that 'the *jury* is the lie detector.' *United States v. Barnard,* 490 F.2d 907, 912 (C.A.9 1973) (emphasis added), cert. denied, 416 U.S. 959, 94 S.Ct. 1976, 40 L.Ed.2d 310 (1974). Determining the weight and credibility of witness testimony, therefore, has long been held to be the 'part of every case [that] belongs to the jury, who are presumed to be fitted for it by their natural intelligence and their practical knowledge of men and the ways of men.' *Aetna Life Ins. Co. v. Ward,* 140 U.S. 76, 88, 11 S.Ct. 720, 724-725, 35 L.Ed. 371 (1891)".

*United States v. Scheffer* (1997), 523 U.S. 303, 313, 118 S.Ct. 1261, 1266–1267, 140 L.Ed.2d 413.

**{¶73}** Appellant's fourth assignment of error is overruled.

V.

**{¶74}** In his fifth and final assignment of error, Appellant argues that he was deprived of his right to the effective assistance of counsel.  We disagree.

**{¶75}** A claim of ineffective assistance of counsel requires a two-prong analysis. The first inquiry is whether counsel's performance fell below an objective standard of reasonable representation involving a substantial violation of any of defense counsel's essential duties to Appellant. The second prong is whether Appellant was prejudiced by counsel's ineffectiveness. *Lockhart v. Fretwell* (1993), 506 U.S. 364, 113 S.Ct. 838, 122 L .Ed.2d 180; *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674; *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373.

**{¶76}** In determining whether counsel's representation fell below an objective standard of reasonableness, judicial scrutiny of counsel's performance must be highly deferential. *Bradley,* 42 Ohio St.3d at 142, 538 N.E.2d 373. Because of the difficulties inherent in determining whether effective assistance of counsel was rendered in any given case, a strong presumption exists that counsel's conduct fell within the wide range of reasonable, professional assistance. *Id.*

**{¶77}** In order to warrant a reversal, Appellant must additionally show he was prejudiced by counsel's ineffectiveness. This requires a showing that counsel's errors were so serious as to deprive the defendant of a fair trial; a trial whose result is reliable. *Strickland* 466 U.S. at 687, 694, 104 S.Ct. at 2064; 2068. The burden is upon the

defendant to demonstrate that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id. Bradley,* supra at syllabus paragraph three. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Strickland,* supra; *Bradley,* supra.

**{¶78}** In the instant case, Appellant asserts trial counsel was ineffective for failing to introduce the video of the traffic stop and further, that counsel should have allowed him to testify in his own defense.

**{¶79}** Decisions regarding which defense to pursue at trial is a matter of trial strategy "within the exclusive province of defense counsel to make after consultation with his client." *State v. Murphy,* 91 Ohio St.3d 516, 524, 2001-Ohio-0112. This Court can only find counsel's performance regarding matters of trial strategy deficient if counsel's strategy was so "outside the realm of legitimate trial strategy so as 'to make ordinary counsel scoff.' " *State v. Woullard,* 158 Ohio App.3d 31, 813 N .E.2d 964, 2004-Ohio-3395, ¶ 39, quoting *State v. Yarber* (1995), 102 Ohio App.3d 185, 188, 656 N.E.2d 1322. Further, the Ohio Supreme Court has recognized if counsel, for strategic reasons, decides not to pursue every possible trial strategy, defendant is not denied effective assistance of counsel. *State v. Brown* (1988), 38 Ohio St.3d 305, 319, 528 N.E.2d 523.

**{¶80}** Further, decisions regarding what witnesses to call at trial fall within trial strategy and, absent prejudice, generally will not constitute ineffective assistance of counsel. *State v. Hessler,* Franklin App. No. 01AP-1011, 2002-Ohio-3321; *State v. Coulter* (1992), 75 Ohio App.3d 219, 598 N.E.2d 1324.

**{¶81}** In this case, we find the decision to not introduce the video of the traffic stop and not to call Appellant to the stand was a tactical decision, and the Ohio Supreme Court has stated "[w]e will ordinarily refrain from second-guessing strategic decisions counsel make at trial, even where counsel's trial strategy was questionable. *State v. Clayton* (1980), 62 Ohio St.2d 45, 49, 402 N.E.2d 1189." *State v. Myers* (2002), 97 Ohio St.3d 335, 362, 780 N.E.2d 186, 217.

**{¶82}** Further, the trial court in this case confirmed with Appellant that it was his decision not to testify. (T. at 173).

**{¶83}** Appellant's fifth assignment of error is overruled.

**{¶84}** For the foregoing reasons, the judgment of the Court of Common Pleas of Delaware County, Ohio, is affirmed.

Judgment affirmed.

By: Wise, J.

Gwin, P. J., and Delaney, J., concur.

IN THE COURT OF APPEALS FOR DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT


STATE OF OHIO                         :

      Plaintiff-Appellee            :

-vs-                              :          JUDGMENT ENTRY

ANTOINE JEFFERSON          :

      Defendant-Appellant     :          Case No. 11 CAA 04 0033


For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Delaware County, Ohio, is affirmed.

Costs assessed to Appellant.


_____


_____


_____

                                JUDGES