[Cite as *State v. Harris*, 2023-Ohio-1544.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | | | |
|---|---|---|---|
| STATE OF OHIO | : | JUDGES: | |
| | : | Hon. Patricia A. Delaney, P.J. | |
| Plaintiff-Appellee | : | Hon. Craig R. Baldwin, J. | |
| | : | Hon. Andrew J. King, J. | |
| -vs- | : | | |
| | : | | |
| JOSHAUAN HARRIS | : | Case No. 22-CA-00091 | |
| | : | | |
| Defendant-Appellant | : | O P I N I O N | |


| | |
|---|---|
| CHARACTER OF PROCEEDING: | Appeal from the Court of Common Pleas, Case No. 22-CR-117 |
| | |
| JUDGMENT: | Affirmed |
| | |
| DATE OF JUDGMENT: | May 8, 2023 |


APPEARANCES:

| | |
|---|---|
| For Plaintiff-Appellee | For Defendant-Appellant |
| | |
| KENNETH W. OSWALT | ANDREW T. SANDERSON |
| 20 South Second Street | 738 East Main Street |
| Fourth Floor | Lancaster, OH  43130 |
| Newark, OH  43055 | |

*King, J.*

{¶ 1}  Defendant-Appellant Joshauan M.D. Harris appeals the July 6, 2022 judgment of the Licking County Court of Common Pleas overruling his motion to suppress. Plaintiff-Appellee is the state of Ohio.

### Facts and Procedural History

{¶ 2}  On February 15, 2022, an undercover detective assigned to the Central Ohio Drug Enforcement Task Force observed a red Ford Focus leaving a Hudson Avenue home in Newark, Ohio which the task force had under surveillance. The detective watched the driver fail to signal before changing lanes. He radioed Licking County Sheriff's Deputy Benjamin Martens who was nearby and who performed a traffic stop of a red Ford Focus.

{¶ 3}  Harris was a backseat passenger in the vehicle. Martens ordered the driver and all three passengers out of the car and placed the driver in the back seat of his cruiser to handle the traffic infraction. As Martens was gathering information from the driver and issuing a warning, Licking County Deputy Kris Kimble arrived at Martens' request with his canine partner Harry. Harry is trained to detect narcotics, specifically cocaine, methamphetamine, and heroin. Upon arrival, Kimble noticed three people standing outside the Ford and one person in the backseat of Martens' cruiser. Kimble deployed Harry to the Ford for a free air sniff. Harry alerted to the presence of narcotics in the vehicle.

{¶ 4}  The vehicle was subsequently searched. A black bookbag was discovered in the backseat. Harris had previously been observed leaving the Hudson Avenue home carrying a black bookbag. Inside the bookbag was a firearm and plastic baggies

containing fentanyl and methamphetamine. A search of Harris's person incident to arrest led to the discovery of $1,624 in his pocket.

{¶ 5} As a result of these events, Harris was charged with various aggravated drug possession charges. He pled not guilty to the charges and filed a motion to suppress. He raised two arguments as to why the evidence contained in the backpack should be suppressed, specifically that the duration of the stop was impermissibly extended, and that the warrantless search of the backpack container was improper.

{¶ 6} On April 27, 2022, a hearing was held on Harris's motion to suppress. Counsel for Harris stipulated to the deputies training and experience, the date and venue, the authenticity of Marten's dash camera and body camera videos, the training and certification of Harry, the positive alert, probable cause to search the vehicle following the alert, and each exhibit produced by the state. Transcript of hearing (T.) 6, 7, 32, 35.

{¶ 7} The state elicited testimony from Martens and Kimble who testified regarding their roles in the above outlined traffic stop. Harris rested without presenting evidence.

{¶ 8} After taking the matter under advisement the trial court denied Harris's motion to suppress.

{¶ 9} Harris filed an appeal and the matter is now before this court for consideration. He raises one assignment of error as follows:

I

{¶ 10} "THE TRIAL COURT COMMITTED HARMFUL ERROR IN DENYING THE DEFENDANT-APPELLANT'S MOTION TO SUPPRESS EVIDENCE."

{¶ 11} In his sole assignment of error, Harris argues the trial court erred by denying his motion to suppress. We disagree.

Standard of Review

{¶ 12} Appellate review of a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 154-155, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. When ruling on a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and to evaluate witness credibility. See *State v. Dunlap*, 73 Ohio St.3d 308,314, 652 N.E.2d 988 (1995); *State v. Fanning*, 1 Ohio St.3d 19, 20, 437 N.E.2d 583 (1982). Accordingly, a reviewing court must defer to the trial court's factual findings if competent, credible evidence exists to support those findings. See *Burnside*, supra; *Dunlap*, supra. Once this Court has accepted those facts as true, it must independently determine as a matter of law whether the trial court met the applicable legal standard. See *Burnside,* supra, citing *State v. McNamara*, 124 Ohio App.3d 706, 707 N.E.2d 539 (4th Dist. 1997); See, generally, *United States v. Arvizu*, 534 U.S. 266, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002). That is, the application of the law to the trial court's findings of fact is subject to a de novo standard of review *Ornelas v. United States*, 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996).

{¶ 13} Three methods exist to challenge a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of facts. *State v. Fanning*, 1 Ohio St.3d 19, 20, 437 N.E.2d 583 (1982). "A reviewing court is bound to accept those findings of fact if supported by competent, credible evidence." *State v. Curry*, 95 Ohio App.3d 93, 96, 641 N.E.2d 1172 (8th Dist.1994). Second, an appellant may argue

the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, the appellate court can reverse the trial court for committing an error of law. *State v. Williams*, 86 Ohio App.3d 37, 41, 619 N.E.2d 1141 (4th Dist.1993), overruled on other grounds. Third, an appellant may argue the trial court incorrectly decided the ultimate issue raised in the motion to suppress. When addressing the third type of challenge, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in the given case (Citation omitted). *Curry* at 96.

{¶ 14} Harris' challenge to the trial court's decision rests on mixed claims of law and fact.

## Traffic Stops

{¶ 15} " '[W]hen detaining a motorist for a traffic violation, an officer may delay a motorist for a time period sufficient to issue a ticket or warning.' " *State v. Elliot*, 5th Dist. Guernsey No. 18 CA 22, 2019-Ohio-4411, 2019 WL 5543085, ¶ 21 quoting *State v. Batchili*, 113 Ohio St.3d 403, 2007-Ohio-2204, 865 N.E.2d 1282, ¶ 12 quoting *State v. Keathley*, 55 Ohio App.3d 130, 131, 562 N.E.2d 932 (2nd Dist.1988). The scope and duration of a routine traffic stop "must be carefully tailored to its underlying justification * * * and last no longer than is necessary to effectuate the purpose of the stop." *State v. Latona*, 5th Dist. Richland No. 2010-CA-0072, 2011-Ohio-1253, 2011 WL 917728, ¶¶ 20-21 quoting *Florida v. Royer*, 460 U.S. 491, 500, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983); see also, *State v. Gonyou*, 108 Ohio App.3d 369, 372, 670 N.E.2d 1040 (6th Dist.1995). The measure of the time period includes the time sufficient to run a computer check of the driver's license, registration, and vehicle plates. *State v. Elliot*, 2019-Ohio-4411, ¶ 21

citing *State v. Bolden*, 12th Dist. Preble No. CA2003-03-007, 2004-Ohio-184, 2004 WL 77617, ¶ 17 citing *Delaware v. Prouse*, 440 U.S. 648, 659, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979). Additionally, " '[i]n determining if an officer completed these tasks within a reasonable length of time, the court must evaluate the duration of the stop in light of the totality of the circumstances and consider whether the officer diligently conducted the investigation.' " *Id.*, quoting *State v. Carlson*, 102 Ohio App.3d 585, 598-599, 657 N.E.2d 591 (9th Dist.1995), citing *State v. Cook*, 65 Ohio St.3d 516, 521-522, 605 N.E.2d 70 (1992), and *United States v. Sharpe*, 470 U.S. 675, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985). See also *State v. Whitman*, 184 Ohio App.3d 733, 2009-Ohio-5647, 922 N.E.2d 293 (5th Dist.); *State v. Woodson*, 5th Dist. Stark No. 2007-CA-00151, 2008-Ohio-670, 2008 WL 442569, ¶ 21.

Preliminary Matters

{¶ 16} As an initial matter, we note the state, for the first time here on appeal, argues Harris is without standing to challenge the search of the backpack because he did not own the car it was found in and denied ownership of the backpack at the scene. Harris did not file a reply brief.

{¶ 17} Both drivers and passengers in a vehicle may challenge the validity of a traffic stop. *State v. Carter*, 69 Ohio St.3d 57, 63 (1994). "The question of whether a person may challenge the search of a vehicle in which they have placed an item of property is a distinct inquiry." *State v. Redding*, 9th Dist. No. 10CA0018-M, 2010-Ohio-4286, at ¶ 9 "[S]uppression of the product of a Fourth Amendment violation can be successfully urged only by those whose rights were violated by the search itself[.]" *Alderman v. United States*, 394 U.S. 165, 171-72 89 S.Ct. 961, 22 L.Ed.2d 176 (1969).

"[O]ne who owns or lawfully possesses or controls property will in all likelihood have a legitimate expectation of privacy by virtue of [the] right to exclude." It is well established that an individual has a heightened expectation of privacy in the contents of a closed container. *United States v. Chadwick*, 433 U.S. 1, 13, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977).

{¶ 18} The record of the suppression hearing in this matter provides little information from which this court could determine Harris's standing, but the remaining record is of some assistance. According to the arrest warrant, Harris was seen leaving a residence on Hudson Avenue carrying a black bookbag and getting into the rear driver's side seat of the Ford Focus. Docket at 1. Upon searching the Ford Focus, deputies discovered the black backpack, "which was seated at defendant Harris's feet." *Id.* The state's bill of particulars provides the same information. Docket at 14.

{¶ 19} Additionally, other than at the scene of the traffic stop, Harris did not deny ownership of the backpack. His motion to suppress, filed March 11, 2022, indicates "Mr. Harris challenges the expansion of the traffic stop that lead to the search of Mr. Harris's effects." Docket at 16. Harris further argued the deputies "lacked a reasonable and constitutional basis to have searched the closed container." *Id.* Harris's challenge therefore appears to be to the search of the backpack which he characterizes as his "effects."

{¶ 20} Accordingly, we find even though Harris initially denied ownership of the bag, evidence from the record and the suppression hearing indicate Harris was seen carrying the backpack and it was found situated at his feet when the traffic stop took place.

Harris therefore had a reasonable expectation of privacy in the bookbag and standing to challenge the search of the same.

Harris's Arguments

{¶ 21} Harris faults the trial court for focusing only on the time it took for Martens to issue a warning to the driver and whether the canine sniff reasonably took place within that time period rather than the "nature" of the encounter. Harris concedes the traffic stop was lawful, but argues the traffic stop was merely a pretext to search the interior of the Ford for drugs, and further argues Deputy Martens had no cause to order him out of the vehicle for anything other than issuing a traffic citation. According to Harris, Deputy Martens could only issue a traffic citation and send the men on their way, not expand the stop to include a drug investigation and ultimately the search of the bookbag.

{¶ 22} First, as to Harris's mention that the stop was pretextual, in *State v. Ackerson*, 5th Dist. Stark No. 2012CA00228, 2013-Ohio-4020, we court noted "[a] traffic stop is valid under the Fourth Amendment if the stop is based on an observed traffic violation or if the police officer has a reasonable, articulable suspicion a traffic or equipment violation has occurred or is occurring. *City of Dayton v. Erickson*, (1996), 76 Ohio St.3d 3. It is irrelevant the officer may have had other subjective motives for stopping the vehicle. *Id.*" *Ackerson*, ¶ 21. Harris and his companions were drawn to the attention of law enforcement in the area when he and his companions were observed leaving a home which was under surveillance for suspected drug activity. Deputy Martens had prior knowledge of the ongoing narcotics investigation when he performed the traffic stop. T. 11. That knowledge, however, in no way impacted the legality of the stop.

{¶ 23} Next, Harris argues Deputy Martens was not justified in ordering him out of the vehicle. It is well settled, however, that once a lawful traffic stop has been made, officers may order the driver and any passengers to exit the vehicle pending completion of the traffic stop. *Pennsylvania v. Mimms*, 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977); *Maryland v. Wilson*, 519 U.S. 408, 117 S.Ct. 882, 137 L.Ed.2d 41 (1997); *State v. Evans*, 67 Ohio St.3d 405, 408, 618 N.E.2d 162 (1993).

{¶ 24} Harris next relies upon *State v. Robinette*, 80 Ohio St.3d 234, 1997-Ohio-343, 685 N.E.2d 762 to support his contention that deputies in this matter unjustifiably expanded their traffic infraction investigation into a drug investigation without articulable facts giving rise to illegal activity justifying extension of the detention. *Robinette*, however is inapplicable to the facts this matter as it did not involve a canine sniff.

{¶ 25} "When a motorist is lawfully detained pursuant to a traffic stop, and when the purpose of the stop has yet to be fulfilled, the Fourth Amendment is not violated when the officer employs a trained narcotics canine to sniff the vehicle for drugs." *Ackerson*, supra ¶ 23 citing *State v. Jefferson*, 5th App. No. 11 CAA040033, 2012-Ohio-148. Harris does not challenge the legality of the stop, nor that the purpose of the stop had yet to be fulfilled when Deputy Kimble arrived with canine Harry.

{¶ 26} Further, this court had found a canine sniff is not a search within the meaning of the Fourth Amendment as long as the canine is legally present at its vantage point when its sense is aroused. *State v. Cook*, 5th Dist. Muskingum Nos. 2010-CA-40, 2010-CA-41. 2011-Ohio-1776, ¶ 60 citing *State v. Jardines*, 9 So.3d 1, 2008 WL 4643082, 33 Fla. L. Weekly D2455 (Fla. 3d DCA Oct. 22, 2008); *People v. Jones*, 279 Mich.App. 86, 755 N.W.2d 224, 228 (2008). We have further found because a canine sniff is not a

search, " 'an officer need not have formed a reasonable suspicion that drug-related activity is occurring in order to request that a drug dog be brought to the scene or to conduct a dog sniff of the vehicle.' " *State v. Latona,* 5th Dist. Richland No. 2011-Ohio-1253, ¶ 27 quoting *State v. Guckert*, 4th Dist. Washington App. No. 99CA49, 2000 WL 33226314, (Dec. 20, 2000). citing *State v. Keller*, 2nd Dist. Montgomery App. No. 17896, 2000 WL 20873, (Jan. 14, 2000). "[W]hen a [drug] dog alerts to the presence of drugs, it gives law enforcement probable cause to search the entire vehicle." *State v. Nguyen*, 157 Ohio App.3d 482, 2004-Ohio-2879, 811 N.E.2d 1180, ¶ 22. In Wyoming v. Houghton, 526 U.S. 295, 119 S.Ct. 1297, 143 L.Ed.2d 408(1999), the United States Supreme Court held that police officers with probable cause to search a car may search a passenger's belongings found in the car that could conceal the object of the search. Accord *State v. Vega*, 154 Ohio St.3d 569, 2018-Ohio-4002, 116 N.E.3d 1262.

{¶ 27} Deputy Martens therefore need not have formed reasonable suspicion that drug activity was occurring before calling for a canine. He nonetheless testified he called for a canine sniff due to the nervousness of the driver of the Ford Focus, his knowledge that Harris and his companions were coming from a suspected drug house, and his knowledge of an active investigation focusing on that house. T. 23. Canine Harry arrived and alerted on the Ford Focus 12 minutes and 6 seconds into the stop and while Deputy Martens was still in the process of issuing a warning to the driver of the vehicle. T. 25, states exhibits 1 and 2. The entire encounter in this matter took place in less than 15 minutes which we find is not unreasonable.

{¶ 28} In summary, the nature of the encounter did not run afoul of Harris's Fourth Amendment protections. Deputy Martens was permitted to ask Harris to exit the vehicle,

need not have developed probable cause to call for a canine sniff, and canine Harry's alert on the Ford established probable cause to search the entire vehicle and Harris's backpack. We, therefore overrule Harris's sole assignment of error.

{¶ 29} The judgment of the Licking County Court of Common Pleas is affirmed.

By King, J.,

Delaney, P.J. and

Baldwin, J. concur.

AJK/rw